Anna S. EPPARD, Plaintiff,

v.

Caspar WEINBERGER, Secretary of Health, Education and Welfare, Defendant.

Civ. A. No. 72-C-66-H.

United States District Court, W. D. Virginia, Harrisonburg Division.

July 17, 1974.

R. Toms Dalton, Jr., Waynesboro, Va., for plaintiff.

E. Montgomery Tucker, Asst. U. S. Atty., Roanoke, Va., for defendant.

## OPINION and JUDGMENT

DALTON, District Judge.

■ This case is before the court pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g) to review a final decision of the Secretary of Health, Education and Welfare denying plaintiff's claim for disability insurance benefits for a period of disability under sections 223 and 216(i) of the Social Security Act. Plaintiff first filed an application for disability insurance benefits on July 23, 1971, alleging that she became unable to work on May 21, 1971. Plaintiff's application was denied initially, on reconsideration, and after a hearing. Following denial by the Appeals Council of her request for review of the hearing examiner's decision, plaintiff brought this action. On motion of the Secretary, this court remanded the case for further administrative action by order of February 5, 1973. After receipt of additional evidence, and a supplement hearing at which plaintiff, her attorney, her witnesses, and a vocational expert appeared, the administrative law judge issued a recommended decision, finding plaintiff not disabled within the meaning of the Social Security Act. The Appeals Council, which further discussed the evidence, adopted the recommendation by its own decision of November 27, 1973. This decision stands as the final decision of the Secretary and as such is reviewable by this court, 42 U.S.C. § 405(g).

■■ For purposes of this review, plaintiff must have established that her disability began prior to November 27, 1973, the date the Secretary's decision became final. 42 U.S.C. § 423(b) and § 416(i)(2)(G). In deciding whether Mrs. Eppard is disabled within the meaning of the Social Security Act, the function of this court is not to try the case *de novo*, but rather is to determine if there is substantial evidence to support the administrative decision denying benefits. 42 U.S.C. § 405(g); Hicks v. Gardner, 393 F.2d 299 (4th Cir. 1968).

The evidence in this case discloses that plaintiff is now forty-six years old and lives in Waynesboro, Virginia. She is married and has had three children, two of whom are still at home. Mrs. Eppard is a high school graduate. She has worked as a machine operator, as a laboratory assistant in a drug plant, and most recently, as a relay operator at a General Electric plant, operating a small welding machine.

The plaintiff testified at her hearing that she does not drive a car, has a limited social life, and a few interests, such as reading; she does very little housework. She states that her chief impairments are spinal arthritis, a damaged cranial system, "conversed" pelvis, poor circulation, and migraine headaches. Her subjective complaints concerning her health, as reflected in the record, have been legion. Her husband and daughter testified at the administrative hearing, and generally corroborated plaintiff's testimony of limitations in her everyday activities and functions, and of the troubles her medical condition have caused her. In August of 1973, Mrs. Eppard was 5′ 2″ tall, and weighed 155 pounds, after having lost some fifteen pounds. She takes several medications, including Talwin for back pain, Empirin III, Librax, and Meprobamate.

As is stated by the Secretary, plaintiff's medical record as a whole reveals a person with an apparent lifelong obsession of phyical illness and invalidism. The medical evidence of record is lengthy, and the court will summarize it where possible.

Medical findings appear in office notes of Dr. J. P. Anderson, a general practitioner who treated plaintiff on some thirty-five occasions between August of 1958 and February of 1971. They indicate that he treated plaintiff for a variety of ailments, including headaches, sinobronchitis, skin rashes, stomach distress, cystitis, a drawing of the face with giddiness in April of 1966, bursitis, tonsilitis, fever blisters, ulcer pain, flu and fever, and "stroke," which was diagnosed as a conversion reaction. She had previously had an appendectomy and total hysterectomy.

Plaintiff was admitted to the University of Virginia Hospital from May 5 to May 13, 1966, when she complained of double vision, speech difficulty, numbness and drawing of her face to the left, and unsteady gait. Her period of hospitalization was uneventful; diagnosis was probable multiple sclerosis, with tumor to be ruled out. Mrs. Eppard was sent to see Dr. J. Q. Miller, a neurologist, who reported in 1972 that he came to no definite diagnosis of plaintiff in 1966, but he was of the opinion that she had a "neurologic disease" at that time.

Dr. M. E. Myers, a general surgeon, furnished a report of plaintiff's admission to the Rockingham Memorial Hospital from May 21 (the alleged date of onset of plaintiff's disability) to June 11, 1971. Plaintiff was complaining of pain low in her back and in her right leg. Plaintiff's back motions and straight leg raising were restricted and her finger joints showed arthritic deformity. X-ray of her lumbosacral spine revealed minimal osteoarthritis; x-ray of the right hand revealed some cystic changes in several of the carpal bones. The clinical impressions were sciatic neuritis, chronic arthritis of the hands, obesity and migraine headaches. Plaintiff improved gradually and upon medication of Empirin Compound # 3 and Darvon, her pain subsided.

A report by Dr. G. G. Craun, an orthopedic surgeon, dated August 1971, gives a history of plaintiff's back and hip trouble since 1961. In 1961 x-rays of her lumbar spine showed a "transverse" sacroiliac joint and a curvature and narrowing at the lumbosacral joint. In 1963, she had a bursa removed from her right knee. In May of 1971, x-rays revealed lumbar osteoarthritis. At that time Dr. Craun found extreme tenderness of plaintiff's right hip joint with sharply limited motion and tenderness over her lumbosacral joint. In 1961 she had surgery on her left wrist; later she complained of finger pain and morning stiffness. Dr. Craun thought it likely that plaintiff would continue to have recurrent disabling episodes of severe backache with sciatica on the right, and thought her prognosis poor and her state of disability total.

On December 3, 1971, Dr. D. K. Webster, an orthopedic surgeon, examined plaintiff for the Virginia State Agency. At that time she complained of back and

neck pain, migraines, and pain in the right leg. Dr. Webster found pain in plaintiff's neck upon movement, pain and 25 percent reduced motion in both shoulders, marked restrictions in movement of the low back (back and forward bending were less than half normal), straight leg raising on the right was limited by 50 percent, on the left by 25 percent, flexion of the hips was limited by 50 percent and was painful. Rotation of the right hip was limited by 50 percent, the left to a lesser extent. Dr. Webster thought the prognosis guarded the diagnosed chronic lumbosacral strain. He thought that surgery would not be beneficial and recommended symptomatic treatment.

Dr. J. M. Knapp, a psychiatrist, examined plaintiff in December of 1971 and reported that she had a multitude of complaints, some of which seemed rather vague, but the doctor noted that she talked as if she were already an invalid and unable to work any more. She spoke of several "strokes" involving the face and her leg and she said she had had so many illnesses that she could not name or number them. Dr. Knapp found plaintiff to be well-oriented and without signs of excessive tension or depression. He found it difficult to make a definite psychiatric diagnosis and he rendered none. The doctor regarded her as a person who had been "largely inadequate all along," who had become overcome by the pressures of working. In Dr. Knapp's estimation, there was "little likelihood" that plaintiff would "ever be employed again with any consistency in any capacity".

Dr. J. P. Anderson reported on March 6, 1972, that plaintiff had been hospitalized from February 5 through February 22, 1972, because of sudden severe disabling low back pain. He treated Mrs. Eppard with analgesics, sedatives, bed rest on a board and physical therapy. On these measures she showed a remarkably slow improvement and even at the time of discharge continued to complain rather bitterly of back pain. Dr. Anderson's diagnosis was osteoarthritis of the spine and marked apprehension or fear of total disability from back trouble. It was his opinion that plaintiff would not suffer any more disability than progressive pain and stiffness in her spine and extremities from her osteoarthritis. He could find no evidence of a ruptured disc or congenital back disease.

An examination of plaintiff by Dr. G. G. Craun on March 7, 1972, revealed tenderness over the lumbrosacral joint, right sciatic trunk and down to the gluteal fold. Her straight leg raising was limited and her sensation was diminished on the right arch. Dr. Craun felt that plaintiff had a lumbosacral strain with sciatic neuritis which had rendered her totally disabled since May 21, 1971.

Dr. J. E. Stoeckel, a general practitioner and physician for plaintiff's last employer, reported on March 9, 1972, that plaintiff was examined by him on February 29, 1972, and he found severe arthritis in her hands, lower spine, hips, and knees which he believed permanently and totally disabled her.

Dr. Myers furnished a second report dated April 26, 1973, which indicates that plaintiff was hospitalized from September 15, 1972, to October 15, 1972, at which time she was diagnosed as having sciatic neuritis, left; chronic arthritis of the lumbosacral spine; and general chronic arthritis. A myelogram was negative. Plaintiff was hospitalized again from January 28, 1973, until February 18, 1973, for stomach problems and weight loss. She was diagnosed as having an active duodenal ulcer; upon treatment, her ingestion and espigastric pain subsided. She also had excision of an ankle lipome and a finger granuloma; there were no postoperative complications other than some delay in healing. Since plaintiff allegedly was unable to do her housework without low back pain, Dr. Myers felt she could not return to her former occupation and that she could do only very light work.

Dr. W. N. Toomy, an internist, performed a consultative examination about June 6, 1973. Plaintiff had full motion in her shoulders, knees and elbows, but

complained of pain while making these motions. She showed pain on straight leg raising and a diffuse sensory deficit of her left leg and foot, with associated pain on palpation of her lower spine. Dr. Toomy's impression was chronic degenerative lumbar disc, degenerative mild to moderate diffuse arthritis, and chronic anxiety reaction, neurotic. He did not feel that plaintiff could hold employment on a production line, as she had been doing, but would be a candidate for retraining. It was thought that her chronic anxiety, which was being treated with "meprobamate", contributed to her general medical situation. In a physical capacities evaluation, Dr. Toomy was of the opinion that plaintiff could not use her hands for repetitive simple grasping or fine manipulation, nor could she use her feet to operate foot controls. She also could not work with her arms extended at waist or shoulder level.

Dr. B. H. Kasinoff, a psychiatrist, next examined plaintiff for the Virginia State Agency on June 27, 1973. He found plaintiff did not appear ill nor in distress. She complained of many symptoms, chiefly pain. From plaintiff's responses to questions, Dr. Kasinoff found she was of average intelligence and expressed no psychotic ideas. After plaintiff described her typical activities, Dr. Kasinoff diagnosed hysterical neurosis, conversion type, which he estimated to be a mild impairment to plaintiff's ability to pursue gainful employment. He recommended out-patient psychotherapy for plaintiff, estimating that within a one to two year period of treatment, she would gradually learn that she was using neurotic defenses to control her anxiety, which he thought would enable her to manage her life without conversion symptoms.

Dr. G. O. White, a neurologist, performed a consultative examination on July 5, 1973. Although Dr. White noted that plaintiff had abnormal neurological findings while hospitalized in 1966, he found the only residual was a mild facial paresis on the left side. He concluded that there was no evidence of serious neurologic disease and no need for special studies.

Dr. G. G. Tanner, a general practitioner in Grottoes, Virginia, provided a statement dated August 23, 1973, which reads *in toto:*

Mrs. Eppard has been seen by me at rather infrequent intervals over the past fifteen years. She has had a variety of troubles from which most of them have recovered [sic] with the exception of a chronic osteoarthritis involving the lumbar spine, phalanges and wrists. She has been treated successfully for a duodenal ulcer which is apparently asymptomatic at this time. Four years ago she had a spell of Belle's Palsy on the right which as of this date has fully recovered. She does now have a persistent radiculitis of the chest and intermittent attacks of migraine.

Her general physical condition is such that I seriously question her ability to ever work at any gainful occupation. Her arthritis certainly has made no improvement and I feel that the course of this is progressing downward.

Dr. Craun, in the latest medical report dated August 28, 1973, stated that plaintiff's repeated attempts to do heavy housework resulted in "repeated bouts of total disability." Dr. Craun found plaintiff had tenderness between the shoulders and under the right shoulder blade and short ribs, in addition to other areas. Based on treatment since September 5, 1961, he believed plaintiff was now "disabled" with reference to any gainful occupation for which she was trained.

It is settled law that the burden of proof rests upon the plaintiff to establish her entitlement to disability benefits, Cyrus v. Celebrezze, 341 F.2d 192 (4th Cir. 1965), but the burden need not be carried beyond a reasonable doubt. Thomas v. Celebrezze, 331 F.2d 541 (4th Cir. 1964). To be disabled within the meaning of the Act a claimant must show "[an] inability to engage in any sub-

stantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

Thus the establishment of a disability and the entitlement to disability benefits is a two-step process that requires first, a finding of a medically determinable physical or mental impairment which can be expected to result in death or last more than twelve months; and second, there must be a factual determination that such impairment renders a claimant unable to engage in substantial gainful activity. Laws v. Celebrezze, 368 F.2d 640, 643 (4th Cir. 1966); Thomas v. Celebrezze, *supra*, 331 F.2d at 545.

It is the latter step which creates difficulty in the mind of the court in this case, as to whether there is substantial evidence in the record to support the Secretary's conclusion that Mrs. Eppard's impairments do not prevent her from engaging in some form of sedentary employment, such as suggested by the "vocational expert" at plaintiff's hearing—packing cartons in a factory, being a laboratory assistant, a desk clerk in a hotel, a hostess-cashier, an elevator operator, or a telephone order sales clerk.

Plaintiff has gone a long way in meeting her burden of establishing her alleged disability. Dr. Craun, an orthopedist, thought her to be totally disabled on the basis of her lumbosacral strain and sciatic neuritis—and he had seen plaintiff on several occasions and had taken x-rays. Dr. Knapp, a psychiatrist, thought plaintiff's chances of engaging in consistent employment to be bleak because of her emotional problems, a sentiment echoed by Dr. Kasinoff. Dr. Stoeckel, an industrial physician, thought that her arthritis permanently and totally disabled her, as did Dr. Tanner. These medical opinions, while certainly not conclusive as to the matter of disability cannot be ignored, and must be considered in viewing the overall picture of possible disability. The medical reports unquestionably establish that the plaintiff has some moderate osteoarthritis in her lumbosacral spine and chronic lumbosacral strain, arthritis in her fingers and hands, sciatic neuritis accompanied by migraine headaches, an active ulcer, and a mental problem variously described as anxiety reaction or hysterical neurosis. She has been hospitalized extensively in recent years, continues to take several medications, and has had a history of going from doctor to doctor with a variety of ailments, causing disruption to her family and the pursuit of employment. Dr. Kasinoff recommended that she undergo a one to two year period of psychotherapy to rid herself of some of her neurotic tendencies. Her subjective testimony, as well as that of her husband and daughter, which the court will not go into at this point, is naturally indicative of total disability.

The vocational expert at plaintiff's hearing only testified as to what jobs conceivably were available to plaintiff *assuming* that she was found capable of sedentary work. The court is of the opinion that while some of the medical evidence may have been susceptible of the conclusion that plaintiff was capable of sedentary work, the evidence taken as a whole is inconclusive enough that further support, amounting to substantial evidence, should have been produced to support the Secretary's conclusion that plaintiff could engage in some of the jobs enumerated by him. The court notes that the nature of the afflictions affecting the plaintiff are of a type generally aggravated by áge and that allegations of incapacitating pain have been made, so that it would be advisable for further orthopedic, and probably neurological and psychiatric, studies to be made in this case.

For the above reasons, this court acting on its own motion, pursuant to § 205 (g) of the Social Security Act, 42 U.S.C. § 405(g), hereby orders that the case shall be, and the same is hereby ordered,

remanded to the Secretary for the taking of further evidence as to plaintiff's ability to engage in some form of substantial gainful employment. Upon remand, either party may introduce all relevant evidence as to this question.

The clerk is directed to send a certified copy of this opinion and judgment to counsel of record.