Philip E. TYLER

v.

Caspar WEINBERGER, Secretary,
HEW.

Civ. A. No. CA 75–0242–R.

United States District Court,
E. D. Virginia,
Richmond Division.

March 5, 1976.

Anita K. Henry, Neighborhood Legal Aid Society, Inc., Richmond, Va., for plaintiff.

N. George Metcalf, Asst. U. S. Atty., Richmond, Va., for defendant.

## MEMORANDUM

WARRINER, District Judge.

This matter is before the Court on cross motions for summary judgment filed by plaintiff, Philip E. Tyler, and defendant, Caspar Weinberger, Secretary

of Health, Education and Welfare. Plaintiff filed an application with the Social Security Administration for entitlement to disability insurance benefits under the Social Security Act, as amended, 42 U.S.C. § 405 *et seq.* The request was denied, whereupon plaintiff filed a request for reconsideration which was also denied. Thereafter a hearing was held on the matter wherein the Administrative Law Judge upheld the earlier decisions against plaintiff's application. This decision was appealed to the Appeals Council which affirmed the finding of the Administrative Law Judge. Having exhausted his administrative remedies plaintiff now seeks judicial review of defendant's unfavorable decision under 42 U.S.C. § 405(g).

To be entitled to disability benefits under the Act one must establish:

. . . [A]n inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months . . . . 42 U.S.C. § 416(i)(1)(A).

. . . [A]n individual . . . shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. . . . "[W]ork which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country. *Id.* § 423(d)(2)(A).

When making a finding as to plaintiff's ability to engage in any substantial gainful activity there are four elements of proof to be considered: (1) plaintiff's age, education and vocational background; (2) subjective complaints; (3) medical data and findings; and (4) expert medical opinion. *Laws v. Celebrezze,* 368 F.2d 640 (4th Cir. 1967).

Pertinent to the above inquiries the record discloses the following information. Plaintiff is 53 years old, has a seventh grade education, and has been limited to the following unskilled occupations: farming; pushing tobacco loads in a tobacco factory; loading and unloading boxcars; sorting leather; and door to door sales.

Plaintiff claims he injured his back in 1953, that he reinjured his back in an automobile accident in 1969 and that he again injured his back and injured his neck in an automobile accident in 1970 or 1971. As a result he claims he suffers from aching pains primarily in the lower and upper back, and in the hips, neck, shoulders, arms and legs. He further claims that the pains plus fatigue make prolonged sitting impossible; sometimes he must repeatedly change position to avoid the pains; usually he has to lie down for four hours after sitting for an hour or more. He also states that the pains make difficult repeated lateral movements of the head and movements of the arms, hands, and feet. In addition, he complains of sudden attacks of nervousness and dizziness which, on occasion, have completely immobilized him for short periods.

Plaintiff alleges that as a result of his condition he has been unable to work since April of 1974. He describes his present activities as reading, watching television and, on occasion, walking to his daughter's house about a block away. He reports that during the daytime he must lie down for about four hours daily, that he cannot drive a car for more than twenty minutes and that he cannot lift more than five pounds.

Diagnostic and clinical reports indicate that plaintiff has the following afflictions: strain of the cervical and lumbosacral spine and excessive lumbar stiff-

ness; fusion of the upper left part of the sacroiliac joints (probably congenital); mild anterior degenerative spur formation present on all the lumbar vertebrae; arthritis of the low dorsal, lumbar, and sacroiliac spine; benign hypertrophy of the prostate gland; chronic prostatitis; osteopoikilosis in both femoral necks; possibly Reiter's syndrome; and likely, bullous emphysema.

Two orthopedic surgeons submitted into evidence findings concerning plaintiff's physical condition and prognosticated as to how plaintiff's impairments will affect his capacity to work. Dr. James Tucker, plaintiff's principal physician, examined and attended him on a number of occasions from January of 1969 until April 1974. Dr. Packer examined plaintiff on behalf of the government on 26 November 1973.

Dr. Tucker's medical report dated 30 October 1973 noted an examination of plaintiff in 1969 that indicated lumbosacral strain and an examination on 21 October 1970, after the first car accident, that indicated strain of the cervical spine and lumbosacral spine. A back brace and periodic bed rest were prescribed. The report further noted an examination of plaintiff on 17 October 1973 that indicated 50% limitation of motion of the lumbar spine. Dr. Tucker diagnosed traumatic arthritis of the lumbar spine for which plaintiff must wear a back brace continuously.

On 26 November 1973, after the second car accident, Dr. Packer again examined plaintiff, who at this time was selling goods door to door but complained that this work was too difficult for him. The examination indicated that the lumbar curve was flattened and that there was considerable lumbar spine rigidity. Spinal motion range indicated 50% loss of spinal flexion, ⅓ loss of rotation. Motion range of the cervical spine showed mild loss of rotative and side bending with good flexion and extension range. X-rays were taken which were read as showing minimal degenerative arthritic changes characteristic of his age and normal hip sacroiliac and lumbar joints. Posture, strength in the arms and hands, sensation in the extremities and reflexes were all found to be essentially normal.

In his report of the examination, Dr. Packer commented that plaintiff's excessive lumbar stiffness suggested an arthritic condition or could be due to traumatic disc degeneration, but stated that the x-rays were essentially normal showing no gross collapse or arthritic spur formation.

Dr. Packer filled out a physical capacities evaluation form on plaintiff which required that the answers be based exclusively on his findings without regard to plaintiff's complaints. He found that in an eight hour day plaintiff could: stand or walk 3 to 4 hours; sit 5 to 6 hours; lift up to 10 pounds, occasionally; use his hands for simple grasping, pushing and pulling or fine manipulation; use his feet for repetitive movements such as operating foot controls; occasionally climb stairs; reach above shoulder level; and work with arms extended at the waist or shoulder. Dr. Packer further found that plaintiff could not bend his back at the waist or bend at the knees.

Dr. Packer concluded that plaintiff apply for indoor type of sales work which would be less strenuous than what he was doing. He felt that plaintiff would need rehabilitative help in finding suitable sales work. He further noted that rehabilitation physiotherapy and medication may be needed.

Dr. Tucker re-examined plaintiff on 4 December 1973. He reported that plaintiff's back was stiff and immobile to a great degree and that he still suffered from arthritis of the low dorsal, lumbar and sacroiliac spine for which he must continue to wear a brace. He concluded that heavy work was certainly beyond plaintiff's capabilities.

On 9 April 1974 Dr. Tucker again examined plaintiff finding his back rigid with muscle spasm, and finding limitation of motion in all directions. The doctor's impression was that plaintiff was totally disabled. Plaintiff was, on that

date, hospitalized and treated by Dr. J. E. Hill, a urologist, for urinary tract bleeding. Dr. Hill, in consultation with Dr. J. B. Roberts, a pathologist, diagnosed benign hypertrophy of the prostate gland and chronic prostatitis. An evacuation of the clots stopped the bleeding. Plaintiff also underwent a transurethral resection of the prostate. After surgery his condition was described as improved, but not recovered. The hospital report noted that plaintiff was additionally suffering from chronic back pain.

Subsequent to the 20 August 1974 hearing before the Administrative Law Judge, there were further medical developments, records of which were submitted to the Appeals Council for consideration. On 9 September 1974 plaintiff was admitted to Virginia Commonwealth University Hospital Emergency Room for an attack of nervousness, leg weakness and "feeling his heart beat." He had been taking valium as prescribed. An examination indicated that back motion was limited to 30° to the left, 20° to the right and 40° forward, with marked muscle spasm in the lumbosacral area. An x-ray of the lower back showed only four lumbar vertebrae, with mild anterior degenerative spur formation on all of those vertebrae. Plaintiff was referred to the hospital's corrective tissue clinic where he complained of pain in the left shoulder, arm, neck and low back, and weakness at times. The clinic report of 14 October 1974 noted decreased muscle strength in the extremities. The tentative impression was Reiter's syndrome. Follow-up x-rays of 18 October 1974 showed fusion of the upper left sacroiliac joint, probably congenital, and osteopoikilosis. The thoracic spine appeared to be normal.

Orthopedic clinic notes of 1 November 1974 showed that plaintiff was admitted to that service for a total disability claim based upon his back and neck injuries. The clinical findings were muscle spasm in the shoulder area, neck rotation limited to 50° to the right and 60° to the left, back pain at 45° bilateral movement and limitation of straight leg raising to 30° on the right. Plaintiff was placed on bed rest with bed board and heating pad. On 22 November 1974 plaintiff returned to the clinic. The progress sheet noted low back pain but no neurological symptoms and plaintiff was discharged.

Finally, a chest x-ray taken 26 November 1974 showed a normal size heart but some lucent areas in the lung bases which likely represent bullous emphysema.

As mentioned, plaintiff's administrative hearing was held on 13 August 1974 which, according to the transcript, lasted one hour and thirteen minutes. All of the foregoing information, excepting that dated subsequent to the hearing, was either already in the record or was presented during the hearing. Plaintiff's testimony as to his prior work experience, his accident, his medical history, his impairments, his pain and suffering, and his present activities was generally consistent with the record. When asked about his ability to remain seated the following colloquy ensued between plaintiff and counsel:

Q. Do you have any difficulty sitting?

A. Now, if I sit a long length of time I get tired, it starts aching down in my legs.

Q. How long can you sit before you start to have problems?

A. Well, I usually sit an hour or a little over.

Q. An hour? What happens after you have been sitting for an hour?

A. Oh, I usually lay down.

Q. Do you have any difficulty remaining in a fixed position?

A. Well, at times—sometimes. It depends on how I sit and where I am sitting.

Q. Can you sit in any position and remain in that position for say, an hour?

A. Well, I usually move about, you know, just change the position— something of that sort.

Plaintiff's wife buttressed plaintiff's testimony by detailing specific instances in which she allegedly observed her husband in agonizing pain or in which he manifested either dizziness or temporary paralysis. She further attested to the diminution in her husband's activities and the intermittent periods of lengthy bed-rest which he requires due to his impairments.

Dr. Jarrel, a duly qualified vocational expert, testified, taking into consideration plaintiff's age, education, prior work history, the medical exhibits and testimony given, that plaintiff was incapable of performing any kind of substantial gainful activity.

The Administrative Law Judge then commented that plaintiff remained seated for a longer period than he had testified was possible and asked Dr. Jarrel to re-evaluate his answer disregarding plaintiff's contention that he required periodic bed rest. Dr. Jarrel, given this assumption, answered that there are in existence in plaintiff's area two types of jobs he would be capable of performing—parking lot attendant and toll collector.

Deciding against plaintiff, the judge's evaluation of the evidence read in pertinent part as follows:

If the trier of fact in this case were to take the claimant's testimony at face value as to his limitations, obviously a finding would have to be made that he was in fact unable to engage in any type of substantial gainful activity and thus entitled to the Social Security benefits sought. . . .

In this particular case, weighing all the evidence, first the Administrative Law Judge is not convinced and does not believe that the claimant is so severely limited by pain and other reasons that he must necessarily, for physical reasons, lie down for four to five hours each day. He testified quite definitely that he could not sit down for more than an hour, due to unbearable pain. However, he sat in the hearing room for one hour and 45 minutes without even changing position, grimacing, standing, or exhibiting any other manifestation usually expected from those in severe pain. Thus, from this standpoint alone, the Administrative Law Judge feels that the claimant grossly exaggerated the extent of his pain and the degree of his being uncomfortable from the pain.

. . .

Due to the fact that the claimant is at home and has nothing to do, apparently he does lie down four to five hours a day but it is well known that when one had degenerative or traumatic arthritis it is advisable to stay as active as possible and move around as much as possible, rather than lying down. All of the leading authorities on arthritis and the primary information in the medical textbooks are to this effect. The Administrative Law Judge is convinced that the claimant would be just as comfortable, if he were up and about for an eight hour work-shift which would not require any heavy stress on his back, as to the jobs testified about by the Vocational Expert. (Tr. 20, 21).

Before dealing in particular with the issues raised by plaintiff in this action, the Court deems it appropriate to examine, generally, the nature and extent of its review in disability benefit cases. Section 405(g) of the Act states that "the findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive." There has been extensive judicial elaboration on the meaning of substantial evidence. It has been said to be such relevant evidence as a reasonable man might accept as adequate to support a conclusion and must be sufficient to justify a refusal to direct a verdict were the case before a jury, *NLRB v. Columbian Enameling and Stamping Co.*, 306 U.S. 292, 299, 59 S.Ct. 501, 83 L.Ed. 660 (1939). It also has been described as more than a scintilla, but less than a preponderance and must be based on the record as a whole. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). In *Hayes v. Gardner*,

376 F.2d 517, 520 (4th Cir. 1967), the Fourth Circuit concluded that the Court's function is not to reweigh the evidence or substitute its judgment for that of the Secretary if his decision is supported by substantial evidence. The Fourth Circuit has further said that resolution of conflicts in the evidence, including conflicting medical opinions and determinations of the credibility of witnesses is not for the Courts in these cases. *Moss v. Gardner*, 411 F.2d 1195 (4th Cir. 1969). However, the Court must consider both evidence that supports and detracts from the decision below. *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951); *Day v. Weinberger*, 522 F.2d 1154 (4th Cir. 1975); *Thomas v. Celebrezze, supra.* Thus, the Court must not resolve but it must weigh conflicting evidence, at least insofar as is necessary to determine that the evidence in support of that decision is substantial in relation to the evidence as a whole.

▮ In the context of this limited weighing process, there are further considerations within the Court's purview. It must determine whether or not the correct legal standards were applied in the fact finding process below. *Knox v. Finch*, 427 F.2d 919, 920 (5th Cir. 1970); *Chester v. Mathews*, 403 F.Supp. 110, 112 (D.Md.1975); *Bishop v. Weinberger*, 380 F.Supp. 293, 295 (E.D.Va.1974). Factual conclusions that are based upon erroneous legal assumptions will not be considered in determining whether there is substantial evidence regardless of the quantity of evidence that induced such conclusions. And if the record, independent of all factual conclusions that may have been based on said erroneous legal assumptions, does not contain substantial evidence to support the Secretary's decision, then the case will be reversed, and remanded or dismissed within the Court's discretion.

▮ Also, in the limited weighing process, the Court must take into account the law as to the relative differences in weight certain types of evidence carry in disability benefit cases. *See*

*Laws v. Celebrezze, supra; Weicht v. Weinberger*, 403 F.Supp. 244 (D.Md. 1975).

▮ Moreover, the Court must be cognizant of who carries the burden of proof, when the burden shifts and how this plays into the larger question of whether there is substantial evidence. *See Catron v. Weinberger*, 394 F.Supp. 1011 (E.D.Va.1975); *Given v. Weinberger*, 380 F.Supp. 150 (S.D.W.Va.1974); *Eppard v. Weinberger*, 378 F.Supp. 970 (W.D.Va.1974). *But see Johnson v. Finch*, 310 F.Supp. 1235 (D.Kan.1970) *aff'd.* 437 F.2d 1321 (10th Cir. 1971). The above general guidelines will be dealt with as they relate, in their peculiar manifestations, to each of the issues raised by plaintiff in this action.

Plaintiff alleges four grounds in support of the relief sought: (1) the instructions given by the Administrative Law Judge to the vocational expert, respecting negation of plaintiff's testimony and that of his witness, were so confusing as to make a systematic response by the expert impossible; (2) the Judge erred in admitting into evidence testimony by the vocational expert which was unreasonable, conjectural, and theoretical, in that it did not designate employment opportunities which are reasonably available, nor, in particular, available to a man with plaintiff's physical limitations; (3) the Judge predicated his decision in part upon his personal knowledge of medical treatment which was a misuse of expert medical testimony, since the Judge failed to qualify as an expert; and (4) the Judge erred in determining that plaintiff's testimony, respecting his ability to remain in a sedentary position and his concomitant degree of pain, was discredited by his retention of that position throughout the administrative hearing and by his manifestations of pain during the hearing.

▮ The Court does not agree with plaintiff regarding his conclusion that the hypothetical question posed by the Administrative Law Judge to the vocational expert was so confusing as to render a reasoned response impossible.

But before going into the merits, it may be helpful to explain why the vocational expert's testimony was so crucial to the question of whether there was substantial evidence that plaintiff was not disabled under the Act. Initially, the burden of proof is on plaintiff to show that he is disabled under the Act. If, however, plaintiff makes a prima facie showing of disability by establishing that he is unable to return to his former type of work, then the burden shifts to the government to show that plaintiff is able to perform other work existing in the national economy. *Taylor v. Weinberger*, 512 F.2d 664 (4th Cir. 1975); *Pelletier v. Secretary of Health, Education and Welfare*, 525 F.2d 158 (1st Cir. 1975); *Catron v. Weinberger, supra*; *Given v. Weinberger, supra*; *Eppard v. Weinberger, supra*. In other words, if plaintiff, in view of all the evidence, does not overcome his burden of establishing that he is incapable of performing his former types of work, this Court must find that the government's denial of disability benefits is supported by substantial evidence whether or not the government has proffered conflicting evidence in the case. Where the government fails to proffer conflicting evidence the shortcomings in plaintiff's evidence may provide by inference substantial evidence to support a denial of the claim. Moreover, where plaintiff fails to meet this initial burden, the issue of his ability to perform other substantial gainful activity becomes irrelevant. On the other hand, if the evidence establishes that plaintiff is incapable of performing his former type of work, this Court cannot find substantial evidence to support the government's denial of benefits unless the government proffers at least some evidence that plaintiff is capable of engaging in alternate substantial gainful employment that is in existence in the national economy.

In this case plaintiff has met his initial burden. The record indisputedly shows that plaintiff is incapable of performing heavy labor which rules out all of his former occupations except door to door sales. Dr. Tucker has found plaintiff to be totally disabled which of course would rule out any kind of work activity. Dr. Packer, the government's physician, concluded that plaintiff should apply for *indoor* types of sales work *less strenuous* than what he was doing. He added that rehabilitation help would be needed in finding suitable, less strenuous sales work. Even the vocational expert, Dr. Jarrel, who is the most qualified on this question, did not include door to door sales work as a type of activity plaintiff could perform. Plaintiff thus having established that he was incapable of performing his former types of occupations, the burden shifted to the government as stated above. This is why plaintiff's contention about the hypothetical question about possible employment posed by the Administrative Law Judge is indeed crucial to the issue of whether there is substantial evidence to support the government's position.

However, the Court finds plaintiff's contention to be without merit. The colloquy between the Judge and the vocational expert was confusing, but not incomprehensible. The Judge first stated:

All right Dr. Jarrel, I'd like for you of course to utilize your expertise in the fields of vocational rehabilitation counseling placement. Consider the information gained by your review of the exhibit file and hearing the testimony here today. And also consider Mr. Tyler's age, education and prior work experience, and to assume that it would in fact be found that due to the effects of impairment upon him, he would be limited to activities involving no lifting of more than five pounds. And requiring no repeated bending, prolonged standing, squatting, stooping or climbing, and which would permit him to set or stand as needed to ease himself, and considering all these factors, give your opinion as to what jobs if any he would have the residual capacity to perform, which would exist in significant numbers in various areas of Virginia, with which you are familiar, or in the national economy.

Dr. Jarrel answered:

> Based on the testimony here today and on the some—some (sic) findings, I'd have to state that Mr. Tyler is unable to perform any kind of substantial gainful activity. He is not capable of working.

Then, the Judge attempted to pose a second question to Dr. Jarrel concerning plaintiff's ability to perform jobs in the area and, after a somewhat confusing exchange between them, the Judge stated:

> . . . [T]he only limitation I'm making is that, if given the opportunity that it wouldn't be necessary for him to lie down four to five hours a day, with the same limitations that were in the prior hypothetical question, because I believe you answered in reply to my [first] question based on his testimony that he had to lie down 4 to 5 hours a day, that you didn't think he could work. Is that correct sir?

Thereafter Dr. Jarrel responded that the Judge was correct and that, under the assumed findings of the second question, plaintiff could perform the jobs of toll collector and parking lot attendant which were both in existence in the area where plaintiff resides.

█ The Court finds that Dr. Jarrel understood the assumed findings in both the first and second hypothetical posed to him by the Judge and answered accordingly. Plaintiff argues that the functional limitations established were: sitting for extended periods; reaching movements of the hands, arms and feet lifting; moving the head from side to side; and necessity for periods of rest. Plaintiff claims that only two of these disabilities were discredited by the Judge: the plaintiff's ability to remain seated and need for bed rest. Plaintiff further points out that when his counsel asked Dr. Jarrel whether plaintiff could perform the jobs named in response to the second hypothetical, providing plaintiff could not move his head from side to side repeatedly or would have difficulty in reaching, Dr. Jarrel replied that "well,

if you are asking me to change the assumed findings, and I can assume that that's what the finding will be, then I'll have to answer in the negative." Plaintiff thus urges that Dr. Jarrel's answer to the Judge's second hypothetical was based on a misunderstanding of the assumed findings and had he only considered what was actually discredited by the judge, then Dr. Jarrel would have still found plaintiff unable to perform any gainful activity.

This view of the record, however, is incorrect. In the Judge's first question to Dr. Jarrel, he laid out what the doctor was to assume relative to plaintiff's physical limitations. The Judge also asked Dr. Jarrel to consider the record, the testimony, and his personal expertise, but the obvious implication was only to the extent that such was consistent with the assumed findings. One of the assumed findings was that the job would permit plaintiff to sit or stand as needed which was obviously with reference to the evidence concerning plaintiff's inability to sit for only an hour and the consequent necessity for bed rest. The second question was in substance identical except for the assumption that bed rest was unnecessary. The physical limitations assumed in the first question clearly did not include impairment of head movement or arm extension. Thus, the Judge, within his prerogative as finder of fact, discounted these limitations and Dr. Jarrel accordingly did the same. Moreover, the doctor's responses indicate that he correctly understood the nature of the limitations imposed by the Judge's questions.

Plaintiff also argues under this issue that the hypotheticals posed by the Judge did not have a reasonable basis in fact. This question will be dealt with more appropriately later in the opinion.

█ The next issue raised by plaintiff is that the Administrative Law Judge erred in relying on vocational testimony which failed to designate reasonable employment opportunities which were reasonably *available* to plaintiff considering his physical limitations.

Plaintiff failed to cite any of the Fourth Circuit opinions in support of this position. *E. g. Boyd v. Gardner*, 377 F.2d 718 (4th Cir. 1967); *Laws v. Celebrezze*, 368 F.2d 640 (1966). However, it is clear from these cases, as well as those cited by plaintiff, that they are interpreting the Act prior to the 1967 amendment. Under the amended Act, the Court is not to be concerned about the availability of jobs in the community or even their availability to one with plaintiff's impairments, but only with the question of plaintiff's ability to engage in gainful activity. *Whiten v. Finch*, 437 F.2d 73 (4th Cir. 1971); *Weicht v. Weinberger*, 403 F.Supp. 244 (D.Md.1975); *Moon v. Richardson*, 345 F.Supp. 1182 (W.D.Va. 1972). Hence, the Court finds that plaintiff's argument on this ground is without merit.

▆ With regard to the issue of misuse of expert medical testimony the Court finds plaintiff's contentions meritorious. In the Administrative Law Judge's decision, which was quoted earlier in this opinion, the Judge pronounced his personal medical recommendation regarding the best treatment for plaintiff's degenerative and traumatic arthritis. The treatment regimen prescribed by the Judge might well relieve plaintiff's symptoms, but in the absence of any medical training on the Judge's part and in view of his failure to introduce into the record any evidence respecting his personal qualifications as a medical expert, the Court can give no weight to his conclusions. The extent to which the Judge's medical opinions affected his overall decision is impossible to determine, however, his recommendation that plaintiff "stay as active as possible and move around as much as possible, rather than lying down," is obviously pertinent to the decision making process that went into this disability benefit case. Considering the above, and considering that whether or not there exists substantial evidence to support the government's decision depends largely on the testimony of the vocational witness whose findings were based on the Judge's assumed find-

ings of fact, particularly the Judge's rejection of the evidence supporting the necessity for bed rest, the Court concludes that the Judge's assumptions constituted legal error, and it was not harmless error.

▆ In deciding that the Judge's consideration of his own medical opinion did indeed constitute legal error, this Court is in agreement with the Fifth and Ninth Circuits that an Administrative Law Judge who is not qualified as a medical expert, should not go outside the record to medical textbooks for the purpose of making his own exploration and assessment as to plaintiff's physical condition. *Day v. Weinberger*, 522 F.2d 1154 (9th Cir. 1975); *Williams v. Richardson*, 458 F.2d 991 (5th Cir. 1972).

As already noted, it is within the Court's purview to consider errors of law on review of these cases. In *Williams v. Ribicoff*, 323 F.2d 231 (C.A.Miss.1963) quoted in plaintiff's brief, the general rationale for reversal in such instances is succinctly stated:

> When an administrative officer is sitting in the dual role as a judge of the law and trier of facts, and when he, as judge, gives himself, as fact-finder, an incorrect instruction as to the law governing the decision he must make, error is committed just as there is error if a judge incorrectly charges a jury. We must assume that the examiner applied the standard as he stated it; and if he did he erred, and on a question of law, the decision therefore [if not otherwise clearly and independently supported by substantial evidence] cannot stand.

As stated, we find that the behavior of the Judge below in this matter constituted reversible error.

▆ Finally, we reach the issue of whether the Judge erred in relying on his observations of plaintiff's pain and suffering in rendering his decision. The Court is in agreement with the government's statement of the law that inasmuch as the hearing Judge has the opportunity to observe demeanor and de-

termine credibility, his observations on these matters should be given great weight. *Good v. Weinberger*, 389 F.Supp. 350 (W.D.Pa.1975); *Johnson v. Richardson*, 329 F.Supp. 871 (W.D.Va. 1971), *aff'd* CCH UIR Fed. para. 16, 626 (4th Cir. 1972). This general proposition of law is qualified to the extent that the Judge's conclusions be permissible under the law and be rationally related to his observations. *See Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971).

■■■■ As a matter of law, pain unaccompanied by any objectively observable symptoms may be so real and so intense as to be disabling so as to support a claim for disability benefits. *Brandon v. Gardner*, 377 F.2d 488 (4th Cir. 1967); *Catron v. Weinberger*, 394 F.Supp. 1011 (E.D.Va.1975). Plaintiff's assertions of pain, however, cannot in law provide the basis for entitlement when unsupported by objective evidence and medical opinion. *Daniels v. Finch*, 318 F.Supp. 559 (W.D.Va.1970). But medical evidence, additional lay testimony, or the plaintiff's physician's expert opinion, based upon his subjective evaluation of plaintiff's complaints as to pain, will provide such a basis whether or not contested by other evidence. *Bishop v. Weinberger*, 380 F.Supp. 293 (E.D.Va.1974).

Plaintiff testified at the Hearing as to pain and suffering and the necessity for bed rest after sitting for extended periods. His testimony was corroborated by medical evidence, expert medical opinion and lay testimony. The only conflicting evidence was the opinion of Dr. Parker who did not deny the existence of pain and suffering, but opined that plaintiff could nevertheless sit for 5 to 6 hours at a time.

■■■■ In light of the foregoing authorities and record herein the Court finds that the decision (see text *supra*) of the Judge below was based in part on a misapplication of the law concerning lay observation of pain and suffering and on an irrational interpretation of the testimony of plaintiff as to his pain and suffering. Insofar as the Judge below discredited plaintiff's credibility as a wit-

ness and rejected his otherwise relevant testimony on pain and suffering because of plaintiff's failure to exhibit what the Judge, independent of plaintiff's representations, considered observable manifestations usually expected from those in severe pain, such constituted an error of law. *Brandon v. Gardner, supra*; *Catron v. Weinberger, supra*. The government cites a number of cases purportedly justifying the Judge's behavior, but plaintiff's rebuttal brief adequately distinguishes these cases from the issue herein.

■■■■ Clearly, a "sit and squirm" index, as plaintiff calls it, applied by a Judge who is not a medical expert will not only result in unreliable conclusions when observing claimants with honest intentions, but may encourage claimants to manufacture convincing observable manifestations of pain or, worse yet, discourage them from exercising their right to appear before an Administrative Law Judge for fear that they may not appear to the unexpert eye to be as bad as they feel.

■■■■ For the foregoing reasons the Court finds that the above standard by which the Judge, in part, based his conclusion concerning the physical manifestations of plaintiff's pain and suffering was legally impermissible. Since the credibility of the testimony of the vocational expert is crucial to the issue of substantial evidence, and since the testimony was responsive to the Judge's assumed findings of fact, which were ostensibly and inextricably based, in part, on this legally impermissible standard, the Court finds that such constitutes reversible error. *See Williams v. Ribicoff, supra.*

■■■■ The Judge's decision indicates that, in addition to his independent notions as to observable symptoms of pain and suffering he also based his conclusion on his observations of plaintiff in light of plaintiff's testimony as to the observable symptoms he exhibited. There is no error of law here. It was within the Judge's discretion to draw conclusions as to the credibility of plain-

**790**

tiff's representations, as to the noticeable effects of his pain and suffering by scrutinizing those representations in light of the Judge's observations of plaintiff from the bench. Here the Judge was not applying an arbitrary sit and squirm index to determine the degree of pain plaintiff was suffering, but was merely observing plaintiff to determine whether the physical manifestations of his disability were consistent with what plaintiff represented them to be.

However, the Judge's findings of fact, although legally permissible to make, were in fact unreasonable in light of the evidence before him. Plaintiff testified at the hearing that he *usually* could not sit for more than a little over an hour, that, depending upon how he sits and where he is sitting, he *usually* has to change his position and that he *usually* lies down after sitting for an hour. The Hearing lasted one hour and thirteen minutes according to the transcript.

With these facts before the Judge he nevertheless gave the following rendition thereof in his decision:

> He [plaintiff] testified *quite definitely* that he could not sit for more than an hour and once that he could not sit for as much as an hour, due to unbearable pain. However, he sat in the hearing room for one hour and 45 minutes without even changing position. . .

■ The law provides that reasonable conclusions must be reached concerning all relevant issues to be decided in an administrative hearing. *Pellerin v. Celebrezze,* 226 F.Supp. 176 (D.C.La. 1964) citing *Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126 (1938). Findings of fact which do not find support in the evidence, either directly or through reasonable factual inferences, are not binding on this Court. *See Conley v. Ribicoff,* 294 F.2d 190 (9th Cir. 1961).

■ The Court finds no necessity to go into a detailed analysis of the Judge's findings of fact with regard to plaintiff's testimony at trial—they are unreasonable under the law and this Court does not accept them. The record indicates that these findings formed the substantial basis for the Judge's conclusion that plaintiff over-exaggerated his complaint about sitting for extended periods and his necessity for periodic bed rest. The record also indicates that the vocational expert found plaintiff totally disabled but for the Judge's discrediting these aspects of the plaintiff's disability.

■ At this point, the Court must decide whether or not to reverse and remand the case for a new hearing consistent with the Court's findings hereinabove or find that plaintiff is entitled to disability benefits and end the matter. The Court acknowledges that the record is incomplete as to the disabling effect of some of the impairments which the medical records and expert medical opinions indicate plaintiff is suffering from. The Court is also cognizant of the significance of its finding that, as the record stands, plaintiff has met his initial burden of establishing his inability to perform his former types of occupations. Plaintiff, having established a prima facie case of disability, the burden shifted to the government to show that plaintiff was capable of performing substantial gainful employment that was in existence in the national economy. Excluding from consideration what has heretofore been found to be erroneous or impermissible findings, the Court concludes that the Secretary's decision was not supported by substantial evidence.

When the case is one that turns upon an inadvertent or procedural technical flaw in the administrative process that reasonably ought to be subject to correction, remand is ordinarily the proper course. *Taylor v. Weinberger, supra.* But we do not find this to be the situation here. On the present state of the record it appears unlikely that the Secretary could on remand reach a conclusion of non-disability which could be supported by substantial evidence.

■ If the Court were to remand the only question to be reheard would be whether plaintiff could perform substantial gainful employment in the national

economy. Plaintiff's physician has found plaintiff to be totally disabled. The opinion of the treating physician is entitled to great weight in determining whether plaintiff is capable of performing substantial gainful activity. *Oppenheim v. Finch*, 495 F.2d 396 (4th Cir. 1974); *Weicht v. Weinberger, supra.* This is particularly true in this case where the government's medical expert examined plaintiff only once some months prior to the treating physician's examination that resulted in the treating physician's finding of total disability. Moreover, the government's physician concluded that plaintiff could sit only 5 to 6 hours at a time. The *Dictionary of Occupational Titles*, which is a generally accepted guide in gauging employment capability in these cases, states that sedentary work implies a capacity to sit for *at least* 6 hours in an eight hour work day. Sedentary work is the lowest rung on the occupational ladder. Thus, the government's primary evidence is not only of less weight than that of plaintiff's in this case, but also fails to substantially contradict plaintiff's contention of total disability.

In short the Court, which has thoroughly examined the record in its entirety, after giving due consideration to the posture of the evidence in light of the Court's findings herein, hereby finds plaintiff to be totally disabled under the Act. The Court notes that were there a re-hearing the burden would be on the government and that a more detailed analysis of all plaintiff's impairments to date, and of the cumulative effect thereof, would have only added to plaintiff's claim.

Accordingly, plaintiff's motion for summary judgment is hereby GRANTED.

An appropriate order shall issue.