**Agnes E. WEICHT**

v.

**Caspar W. WEINBERGER, etc.**

**Civ. No. B–74–718.**

United States District Court,
D. Maryland.

Oct. 14, 1975.

Herbert J. Arnold, Baltimore, Md., for plaintiff.

Jervis S. Finney, U. S. Atty., and Virginia S. Draper, Asst. U. S. Atty., Baltimore, Md., for defendant.

## MEMORANDUM AND ORDER

BLAIR, District Judge.

Mrs. Agnes Weicht worked for 19 years as a health assistant, first at the Washington County Hospital in Hagerstown, Maryland, and later at the Western Maryland State Hospital in the same city. Earlier, she had been employed as a retail sales clerk for five years. A high school graduate and 59 years of age at the time she applied for disability benefits from the Social Security Administration, she has no special skills. At the hospital, she helped patients, particularly paraplegics and quadraplegics, with physical therapy, lifting them from wheelchairs to beds and into position for treatment. On July 24, 1972, she was moving a chronically ill person from a wheelchair to a bed when the patient suffered a spasm. While protecting the patient from a fall, Mrs. Weicht severely twisted her back. Shortly thereafter, she began experiencing pain in her lower back which did not respond to conservative medical treatment. In December 1972, a right lumbar laminotomy was performed on her back at the Johns Hopkins University Hospital, with the excision of herniated discs at L4–L5 and L5–S1. Mrs. Weicht has not returned to work since October 1972 and is presently receiving workmen's compensation benefits and a pension from the Employees' Retirement System of the State of Maryland. In addition to her back difficulties, Mrs. Weicht presented evidence regarding her right patella, which had been surgically removed in 1966, and osteoporosis of both wrists in support of her claim for disability benefits.[1]

Mrs. Weicht petitioned for disability insurance benefits under Section 223 of the Social Security Act, 42 U.S.C. § 423 (1974). Her application was denied, as was reconsideration of the application. Accordingly, she requested a hearing before an administrative law judge, and this hearing was held before Judge J. Robert Brown on February 12, 1974. Judge Brown's decision was adverse to the claimant. The Appeals Council affirmed. Mrs. Weicht now seeks review of the disability decision in this court

---

1. Osteoporosis is an hereditary disease characterized by abnormally dense bones. In adults it occurs in a "benign autosomal form."

Dorland's Illustrated Medical Dictionary, 1107 (1974).

pursuant to section 205(g), 42 U.S.C. § 405(g). The Appeals Council has sent the court a certified copy of the proceedings relating to the application. Both parties have moved for summary judgment. Since neither has requested a hearing the court will proceed to rule on the motions. Local Rule 6.

The role of the court is limited to an examination of the record to ascertain whether there is "substantial evidence" to support the Secretary's finding. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). While the Secretary is, in the first instance, charged with resolving questions of fact, *Thomas v. Celebreeze*, 331 F.2d 541, 543 (4th Cir. 1964), the administrative law judge must make explicit findings on all of the essential questions which determine eligibility as well as the evidentiary basis for his conclusions, *Smith v. Weinberger*, 394 F.Supp. 1002, 1006 (D.Md.1975). This court has the "duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974). Before it can affirm the Secretary's conclusion, the court must find that the administrative law judge has considered:

. . . (1) the clinical findings of examining or treating physicians divorced from their expert judgment or opinions as to the significance of the clinical findings; (2) the medical opinions of these physicians; (3) the subjective evidence of pain and disability testified to by the claimant and corroborated by other evidence; and (4) the claimant's background, work history and present age.

*Hicks v. Gardner*, 393 F.2d 299, 302 (4th Cir. 1968).

Here it is apparent that Judge Brown considered all of the above factors in reaching his determination. He found that Mrs. Weicht was unable to return to her employment as a nurse's assistant because of her continuing back difficulty, but neither the continuing pain she suffered nor the condition of her right knee was sufficient, in his view, to preclude her from engaging in substantially gainful activity and therefore to render her disabled within the meaning of § 423(d)(2)(A). Judge Brown specifically found that Mrs. Weicht's experience in hospitals suited her for a position as "a Hospital Insurance clerk or admissions clerk or other jobs related to a doctor's office as described by the Vocational Expert," and that such jobs do exist even in the rural region where Mrs. Weicht lives. (Tr. at 10–11).[2]

Since Mrs. Weicht could not return to her former employment, the Secretary must demonstrate that "(1) the claimant, given his age, education and work experience, has the capacity to perform a specific job (2) which exists in the national economy." *Taylor v. Weinberger*, 512 F.2d 664, 666, (4th Cir. 1975). The court must conclude that this burden has been met.

With respect to the removed patella, there was no medical evidence in the record which indicated that this injury alone, or in combination with the later back injury, rendered Mrs. Weicht unable to perform any substantial work. Although Dr. A. A. Serpick, an internist, concluded that Mrs. Weicht was totally disabled because of her knee and back injuries, this opinion appears to have been made in support of her retirement system application (Tr. 135). Dr. Eli Lippman, an orthopedic surpeon, rated

---

2. Judge Brown also found that Mrs. Weicht could work as a retail sales clerk. There is not even a scintilla of evidence in the record to support this finding. Indeed, the vocational expert testified that retail sales "would no longer be within her capacity following the surgical procedure." (Tr. 42). Thus, the finding is not supported by the particularized proof of medical and occupational capacity required by *Taylor v. Weinberger*, 512 F.2d 664, 668 (4th Cir. 1975). However, because the record discloses substantial evidence to support Judge Brown's other findings, the court does not believe that this error alone is sufficient for reversal of the Secretary's decision.

the knee as 60% disabled, while the lumbar spinal area was rated 73% disabled, but he did not venture an opinion as to the claimant's continued ability to work. (Tr. 110). Mrs. Weicht testified that her back difficulty aggravated the pain and weakness of her knee (Tr. 32). On the other hand, Mrs. Weicht had been able to continue her job for six years despite the knee condition, even while performing heavy lifting movements, much less light, sedentary work. Moreover, Dr. Chhabbi Bhushan, the orthopedic surgeon who performed the laminotomy, wrote that she could return to work. (Tr. 100). It is the duty of the trier of fact to resolve conflicting evidence, *Richardson v. Perales,* 402 U.S. 389, 399, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). Since the opinion of the treating physician is entitled to great weight, *Oppenheim v. Finch,* 495 F.2d 396, 398 (4th Cir. 1974), the finding of Judge Brown is supported by substantial evidence. As to the osteoporosis, the only evidence is an opinion of Dr. Edward P. Schiele which described the condition as "mild." (Tr. 127).

Thus, the major issue is the state of Mrs. Weicht's back. Mrs. Weicht testified that she was "in pain continuously," "unable to do housework," (Tr. 31), had difficulty in cooking big meals (Tr. 33), and occasionally did not sleep well. (Tr. 34). As noted above, one orthopedic surgeon rated the back as 73% disabled. But Dr. Bhushan, who examined Mrs. Weicht on at least three occasions, wrote four months after the surgery:

At the present time she is essentially symptom free except after prolonged standing or after the hard day's work, particularly during the moist, humid weather when she experiences discomfort across the low back region. Apart from that she has no other symptoms at the present time.

\* \* \* \* \* \*

Impression: I think Mrs. Weicht has done extremely well and she has made an excellent recovery. However, because of the operative finding and knowing what she had, I do not think she can ever go back to the type of work that would involve anything heavier than 12–15 pounds or that would involve undue bending or even twisting movements in the region of the lumbar spine.

(Tr. at 102). Over a month later, Dr. Bhushan reported that "patient was released to return to work on April 23, 1973 . . . ." (Tr. 100).

The record therefore discloses substantial evidence to support a finding that Mrs. Weicht was capable of working at a job which did not require her to lift more than 12 to 15 pounds, and which did not demand undue bending or twisting movements. To show that such a job existed, the Secretary produced a vocational expert, Mr. Richard E. Lawrence, an Associate Professor and Director of Rehabilitation Counseling at the University of Maryland. Based upon an examination of Mrs. Weicht's file, including her age, prior experience, and injuries (Tr. 40), and surveys of hospital employment, including the Hagerstown area, conducted by Mr. Lawrence and others (Tr. 46), he concluded that Mrs. Weicht was capable of performing light employment, such as the job of hospital admissions clerk or hospital insurance clerk. In these jobs, she could put to use her experience in working with hospital patients without extensive entry-level training or skills (Tr. 43–44). The duties of this employment were said to be compatible with the restrictions on Mrs. Weicht's movement prescribed by Dr. Bhushan since they did not require excessive bending or stooping and would allow her to remain seated up to 90% of the time that she would be at work. (Tr. 44). Though Mrs. Weicht indicated that she could not be seated for extended periods of time (Tr. 43), there is no medical evidence in the record to support such a handicap. Finally, Mr. Lawrence testified that positions as a hospital admissions clerk or hospital insurance clerk were actually available, both in the national and regional economies (Tr. 44–45, 46, 50).

■■ To find that a claimant is not disabled, the Secretary must show that he can:

. . . considering his age, education, and work experience, engage in any . . . kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A). Inasmuch as the reports of Dr. Bhushan indicated a capacity to do some work, and the testimony of Mr. Lawrence pointed to a specific job which Mrs. Weicht was capable of performing within the bounds set by her physician, the Secretary made a sufficient showing of capacity to perform substantial gainful activity. *Kyle v. Cohen,* 449 F.2d 489 (4th Cir. 1971); *Wells v. Finch,* 418 F.2d 1247 (4th Cir. 1969); *Timmerman v. Weinberger,* 510 F.2d 439, 442 (8th Cir. 1975); *Gum v. Secretary, Department of Health, Education and Welfare,* 341 F.Supp. 611, 612–13 (D.Md. 1972). *Cf. Oppenheim v. Finch,* 495 F.2d 396, 398 (4th Cir. 1974). Although Mr. Lawrence admitted on cross-examination that he did not know of any openings in the areas he described in Hagerstown (Tr. 50) and that he did not think it likely that a person of Mrs. Weicht's age could obtain such a job (Tr. 48), such considerations are no longer crucial to the Secretary's decision. Since the 1967 amendment to the Social Security Act,

. . . the courts are not to be concerned about the availability of jobs in the community or even their availability to one with claimant's impairments, but only with the question of the claimant's ability to engage in gainful activity.

*Whiten v. Finch,* 437 F.2d 73, 74 (4th Cir. 1971). This result may be harsh and even unfair, but the Congressional intention to set such a high standard is beyond dispute. *Gentile v. Finch,* 423 F.2d 244, 246–47 (3d Cir. 1970).[3]

Hence, the Secretary's decision must be affirmed.

Accordingly, it is this 14th day of October, 1975, by the United States District Court for the District of Maryland, ordered:

That the defendant Weinberger's motion for summary judgment be, and the same is hereby, granted.

---

3. Prior to the adoption of the 1967 amendment, it was the position of this circuit that the Secretary must demonstrate that "there are other kinds of work *actually* available, for which a man with the claimant's impairments may be considered reasonably suited." *Boyd v. Gardner,* 377 F.2d 718, 721 (4th Cir. 1967) (original emphasis). The reasoning behind this position was spelled out by the late Chief Judge Sobeloff:

Moreover, although such jobs might *exist* in that area, this is not to say that they are *"available"* to a man in Cooke's condition. It is a matter of common knowledge that employers are hesitant to hire the handicapped, particularly if they have no special skills. The prospective employer's fear of absenteeism, the possibility of higher workmen's compensation premiums, and uncertainty whether such an employee will be able to perform his work satisfactorily, are factors militating against the abstract judgment that jobs are available to this man. *Cooke v. Celebreeze,* 365 F.2d 425, 428 (4th Cir. 1966) (original emphasis). We are bound to adhere to the Congressional will. *See Wells v. Cohen,* 296 F.Supp. 276, 279 (W.D.Va.1969), *aff'd,* 418 F.2d 1247 (4th Cir. 1969).