**Paul MERRIGAN, Plaintiff,**

v.

**Caspar WEINBERGER, Secretary of Health, Education & Welfare, Defendant.**

**No. 75 C 726.**

United States District Court, E. D. New York.

Feb. 16, 1977.

---

John C. Gray, Jr., Brooklyn Legal Services Corp. B, Brooklyn, N.Y., for plaintiff; Gretchen L. Sprague, Brooklyn, N.Y., of counsel.

David G. Trager, U.S. Atty., E. D. New York, Brooklyn, N.Y. by Richard P. Caro, Asst. U.S. Atty., Brooklyn, N.Y., for defendant.

## MEMORANDUM OF DECISION

NEAHER, District Judge.

In this action for judicial review of a denial of Social Security disability insurance benefits, 42 U.S.C. § 405(g), plaintiff has moved for summary judgment reversing the defendant Secretary's determination and directing that benefits be granted. The motion was referred to a United States Magistrate to review the administrative record, hear the parties' contentions and report his recommendations to the court. See *Mathews v. Weber*, 423 U.S. 261, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976). The case is now before the court on the Magistrate's report recommending judgment in favor of the Secretary and on plaintiff's objections thereto. For the reasons which follow, an independent "searching examination" of the administrative record persuades the court that in the present state of that record the Secretary's denial of benefits cannot be upheld and that the case must be remanded for the development of medical and occupational evidence to support the conclusion that plaintiff is not under a "disability" within the meaning of the Social Security Act, 42 U.S.C. § 423(d)(1).

Plaintiff was 31 years old when he applied for disability benefits on March 28, 1973. He is married and has two children, ages five and eight. While serving in the United States Army in Germany during 1961–1964 he sustained a head injury which brought on convulsive seizures later diagnosed as epilepsy. This condition was then controlled by medication, and apparently he had no further seizure problem after his Army service until 1972 when he left civilian employment as assistant manager of a supermarket rather than take a reduction in salary required by new owners of the business. Until that time he had been continuously employed and supporting his family.

Following a convulsive seizure in November 1972 and two in January 1973, plaintiff sought assistance from the Veterans Administration. He was hospitalized from March 30 to April 18, 1973, and subsequently on six other occasions in 1973 and 1974 for a total of 91 days. The VA confirmed the existence of a convulsive disorder and eventually awarded him 60% disability for his physical dysfunction and 40% additional for "unemployability," a total of 100%, for which he receives a pension of $562 a month. To stabilize his condition, he is required to take regularly such drugs as dilantin, phenobarbital, librium, darvon, tylenol and, when necessary, sleeping pills.

The VA records reflect that in addition to convulsive seizures and other less serious physical disorders (flat feet, gastric ulcer, blurred vision, growths on hands) plaintiff has been undergoing psychotherapy since May 1974—a month before the administrative hearing took place. A report of the treating VA clinical psychologist dated March 5, 1975, notes that plaintiff "shows symptoms of anxiety and depression." She concluded that the "combination of physical and psychological handicaps makes it impossible for [plaintiff] to find and hold suitable employment."

Plaintiff was the only witness at the *de novo* hearing before the administrative law judge. His testimony brought out that in hopes of getting a car service job, he had obtained a chauffeur's license in February 1973 instead of renewing his driver's license. He merely passed an eye test; no physical examination was required, and he did not inform the Department of Motor Vehicles of his epilepsy. He admitted that during the previous year he had driven his

car about 3,000 miles, including taking his wife once a month to New Jersey for shopping and occasionally driving a neighbor to Smithtown, Long Island, for pay. He also testified that after surgical removal of growths in one hand, three of his fingers became "dead," and four other growths have been discovered in the other hand.

Plaintiff has taken various civil service examinations but never followed up regarding job openings. In the summer of 1973 he obtained employment by a bank as a check processor. He was asked to resign after 2–3 weeks when investigation revealed his use of phenobarbital for epilepsy and a youthful misdemeanor. That was the last job he could find. The record shows he has been gainfully employed in each year since 1957 (age 16) through 1972, including his military service.

As previously indicated, there were no medical witnesses at the *de novo* hearing. Except for one private medical report of plaintiff's hospitalization for "gastric ulcer" in 1970, the medical evidence consisted entirely of VA records of plaintiff's hospitalizations, complaints, diagnoses, and treatment for epilepsy and other medical and psychological problems. In the view of the administrative law judge

> "The medical evidence of record does not demonstrate behavioral, intellectual or emotional reactions which are so bizarre or deep-seated so as to impair categorically or completely preclude occupational activity . . . . [or] a loss of function of such marked proportion as to render medically prohibitive all types of employment." Tr. 18–19.

The judge found and concluded, in sum, that plaintiff had not met his burden of proof; that his impairments fell short of the statutory and regulatory standards; that his idleness was not proximately caused by his medical impairments "in the aggregate" and that "at all times subsequent to July 1, 1972 he had the capacity to work in his former occupations"—in short, that at no time on or before January 3, 1975 was plaintiff "disabled" within the meaning of the Act.

The foregoing findings as adopted by the Secretary would, of course, be binding on the court if supported by "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence means more than a mere scintilla; it "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Application of the "substantial evidence" standard does not mean the court must abdicate its function of review. The court is required to scrutinize the whole record to determine whether the Secretary's findings have rational support in the evidence, and if reliance is placed on one portion of the record in disregard of overbalancing evidence to the contrary, the court may then interfere with the Secretary's conclusion. *Hofacker v. Weinberger*, 382 F.Supp. 572, 576 (S.D.N.Y.1974). Furthermore, although the burden of proof of disability is on the claimant for benefits, the court is not bound to sustain the Secretary's denial "where the applicant has raised a serious question and the evidence affords no sufficient basis for the Secretary's negative answer." *Kerner v. Fleming*, 283 F.2d 916, 922 (2 Cir. 1960).

Plaintiff has raised such a question here because the only medical evidence there is in the record plainly contradicts the Secretary's conclusion that plaintiff "had the capacity to work full time in his former occupations," Tr. 19, and therefore was not entitled to disability benefits.

Certainly the plaintiff's testimony affords no basis for discounting the VA medical evidence which shows he is suffering from a serious neurological disorder (grand mal epilepsy) in combination with psychological symptoms of anxiety and depression requiring supportive psychotherapy. The VA's examination and treatment of the plaintiff led it to the conclusion that he was both disabled and unemployable. Although the award of a disability pension by the VA is not binding upon the Secretary, the substantial underlying VA medical evidence may not be disregarded in the

absence of controverting medical evidence or opinion. *Zimbalist v. Richardson,* 334 F.Supp. 1351, 1355 (E.D.N.Y.1971).

Here there was no countervailing medical evidence or opinion developed through independent examination of the plaintiff or even on the basis of the pertinent medical records. That the VA records report plaintiff's epilepsy condition as "well controlled" by medication cannot be accepted as conclusive on the question of "disability" where, as here, those records reveal evidence of complicating psychological impairment. The Secretary's own regulations listing impairments recognize with respect to epilepsy that

> ". . . Where adequate seizure control is obtained only with unusually large doses of medication, consideration will be given to any impairment resulting from the side effects of this medication."

20 C.F.R. Subpart P, App., § 11.00. The relationship, if any, of plaintiff's anxiety and depression symptoms to his epileptic disorder and treatment is a medical question that cannot be disposed of by the lay opinion of an administrative law judge, as was attempted here.

In sum, it is clear that the "disability" questions in this case are complex and cannot be resolved against the plaintiff on the present record. Although a claimant has the ultimate burden of proving his entitlement to benefits, he is not required to show that he is "completely helpless or unable to function." *Gold v. Secretary of Health, Education and Welfare,* 463 F.2d 38, 41 n.6 (2 Cir. 1972). The Social Security Act is a remedial statute, to be broadly construed and liberally applied. *Haberman v. Finch,* 418 F.2d 664, 667 (2 Cir. 1969). Since the *de novo* proceeding has as its purpose the full development of the relevant facts regarding a particular claim and is not adversarial in nature, it is incumbent on the Secretary to properly develop the medical evidence as to a claimant's physical or mental impairments before reaching a conclusion as to his residual functional capacity to undertake gainful employment. That should have been done here.

Accordingly, plaintiff's motion for summary judgment is granted to the extent that the determination of the Secretary denying benefits to plaintiff is reversed and the matter is remanded to the Secretary for the development of additional medical and vocational evidence in order that a proper determination of plaintiff's claim may be made.

SO ORDERED.