Joseph R. **GYURKO**

v.

Patricia **HARRIS,** Secretary of Health, Education and Welfare.

Civ. No. H 79–65.

United States District Court, D. Connecticut.

April 2, 1980.

R. Bradley Wolfe, Gordon, Muir & Foley, Hartford, Conn., for plaintiff.

George J. Kelly, Jr., Asst. U. S. Atty., Hartford, Conn., Richard Blumenthal, U. S. Atty. for the District of Connecticut, New Haven, Conn., for defendant.

## RULING ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

JOSÉ A. CABRANES, District Judge:

This action was brought, pursuant to 42 U.S.C. § 405(g),[1] for judicial review of a final administrative decision denying the plaintiff's claim for disability insurance benefits under the Social Security Act. The matter is now before the court on the parties' cross-motions for summary judgment. The defendant's motion seeks the affirmance of the Secretary's decision on the basis of the administrative record, while the plaintiff urges that the denial of benefits be reversed and remanded with instructions that the defendant pay the plaintiff the benefits claimed.

Because the court finds that the decision appealed from was based on an application of improper legal standards under the relevant statute, inadequate findings of fact and a materially incomplete administrative record, the case is remanded for the taking of additional evidence, the formulation of new findings of fact, and the application of correct legal principles to the facts which are to be developed upon rehearing.

## I. *Procedural Background*

The plaintiff's application for disability insurance benefits, filed on March 17, 1977 (Tr. 35–38),[2] was initially rejected by the

---

**1.** The statute provides, in pertinent part:

"Any individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow. Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides or has his principal place of business. As part of his answer the Secretary shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying or reversing the decision of the Secretary, with or without remanding the cause for a rehearing. The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . . .. The court shall, on motion of the Secretary made before he files his answer, remand the case to the Secretary for further action by the Secretary, and *may, at any time, on good cause shown, order additional evidence to be taken before the Secretary . . . ..*"

42 U.S.C. § 405(g) (emphasis added).

**2.** All citations herein to "Tr. ——" are references to pages of the certified transcript of the record of administrative proceedings relating to

Social Security Administration of the Department of Health, Education and Welfare ("HEW") on June 17, 1977 (Tr. 41–42). Upon reconsideration, his application was turned down a second time on August 4, 1977 (Tr. 46–47).

The plaintiff then took an administrative appeal, and a *de novo* hearing was held before an administrative law judge ("ALJ") in Hartford on December 9, 1977. At that hearing, which lasted 27 minutes, Gyurko was the only witness to testify. He was represented not by an attorney, but by a "claims representative" who was an officer of the Disabled American Veterans. At the hearing before the ALJ, fifteen exhibits were introduced on Gyurko's behalf. (*See generally* Tr. 1, 16–76).

In a decision rendered on February 27, 1978 (Tr. 8–12), the ALJ concluded that Gyurko was "not under a 'disability,' as that term is defined under the Social Security Act, as amended" (Tr. 12), and held that the claimant was not entitled to disability insurance benefits (*Id.*). The HEW Appeals Council affirmed the ALJ's decision, without opinion, on November 30, 1978 (Tr. 2).

The plaintiff commenced this action for judicial review of the defendant's final administrative determination on January 25, 1979. In due course, the parties filed the pending cross-motions for summary judgment.

## II. *The Facts*

The relevant facts, developed through the uncontroverted testimony of the plaintiff at the hearing before the ALJ and through exhibits introduced at that hearing, are not in dispute. The following is a brief summary of those facts, as they relate to the plaintiff's personal background and employment history, his medical ailments, and the effect of his medical problems on his ability to work.

### A. *Plaintiff's Personal Background and Employment History*

Joseph R. Gyurko, a resident of Torrington, Connecticut, was born in that city on November 10, 1919 (Tr. 12, 20). He has eleven years of formal education, the last three of which were taken at a trade school, where he studied drafting and machine operation (Tr. 12, 20–21). Gyurko served in the United States Army in Europe during World War II, and was given an honorable discharge, in part for medical reasons, in 1945 (Tr. 10, 12, 21). Gyurko, who was married in 1949, has three children (Tr. 23).

Since his discharge from the military, Gyurko has worked as a machinist, draftsman and postal clerk. His most recent employment as a draftsman was during the period April 1974—July 1975, when he was employed by Becton Dickinson & Co. in Canaan, Connecticut (Tr. 26). His principal duty there seems to have been the drafting of designs of machine parts from prepared layouts (Tr. 30).

After leaving Becton Dickinson & Co., Gyurko searched for employment for approximately one year (Tr. 31) before obtaining a position as a postal clerk with the United States Postal Service in Waterbury (Tr. 24, 27). From August to December 1976, he operated a mail-sorting machine and handled bags at the Waterbury Post Office (Tr. 24). The plaintiff has not worked since leaving the employ of the Postal Service (Tr. 23).

### B. *Plaintiff's Medical Ailments*

At least since 1947, Gyurko has suffered from psoriasis, a skin disease (Tr. 11–12, 65, 66). According to the report of Dr. William J. Murcko, who has treated the plaintiff for more than three decades, Gyurko has "small patches varying in size from .5 to 1.0 cm. from scalp to arms and legs" (*Id.*). Dr. Robert A. Scalese, who examined Gyurko in connection with his Social Security disability claim in 1977, reported that the plaintiff's skin showed "large amounts of psoriatic-like lesions on the trunk, lower arms and legs" (Tr. 67). This condition has been treated from time to time by Dr. Murcko and by doctors at the Veterans Administra-

the plaintiff's application for disability insurance benefits. This transcript was filed with

the Court as an attachment to the defendant's Answer, as required by 42 U.S.C. § 405(g).

**1125**

tion ("VA") Hospital in Newington, Connecticut; at the suggestion of physicians at that facility, Dr. Murcko has, in recent years, administered coal tar and ultraviolet light treatments to the plaintiff twice every week (Tr. 27, 65, 75).

The plaintiff testified before the ALJ that at times his psoriasis caused his body to "break out all over with a rash," making it "difficult to do practically anything" (Tr. 31). The psoriatic rashes apparently "last for long periods of time" (*Id.*) and alternate with periods of remission (Tr. 65). Gyurko testified that his psoriasis caused an "itching and irritating condition where even a scaling problem would affect my concentration to do work properly" (Tr. 30) and, when he engaged in physical activity, an "irritating, churning condition . . . ." (Tr. 29).

An additional source of discomfort for the plaintiff is a condition referred to as "trench feet" or "frozen feet," apparently attributable to frostbite which Gyurko suffered in the Army in 1944 (Tr. 66, 73). As a result of this ailment, the plaintiff spent nine months in a military hospital in 1944–45 (Tr. 66); it appears to have been a factor in his honorable discharge from the military in August 1945 (Tr. 21). In 1977 the plaintiff told Dr. Scalese that his feet ached so much that he could not stand up for more than an hour at a time. (Tr. 66).

Gyurko has also suffered from arthritis, which causes pain in his hips, elbows, hands, knees and feet, but is apparently most severely felt in his hands and feet (Tr. 66, 75). It is unclear whether there is a connection between the plaintiff's arthritis and his psoriasis. The VA, which took x-rays that revealed "arthritis of the 1st metacarpophalangeal joints bilaterally with a hallux rigidis and tenosynovitis of the Achilles tendons" (Tr. 66), described the condition as "psoriatic arthritis" (Tr. 75). Dr. Murcko, who regularly treated the plaintiff, provided a medical report in support of this determination by the VA (Tr. 78), although Dr. Scalese, who states that Gyurko's arthritis

was "of unknown variety," doubted any connection between it and the plaintiff's psoriasis (Tr. 67). In any event, the plaintiff's uncontradicted testimony before the ALJ was that the arthritis causes him constant pain, which is aggravated by manual work and is somewhat ameliorated by taking aspirin every four hours (Tr. 66, 24).[3]

## C. *The Effect of Plaintiff's Medical Ailments on His Ability to Work*

Gyurko's ailments seem to have grown worse with age. This trend is reflected in the ratings decisions of the VA. As of September 1, 1973, that agency evaluated the combination of psoriatic arthritis, generalized psoriasis and trench feet at a 60% disability level (Tr. 76). After reexamination, Gyurko's disability was rated at 100% in August 1976 (Tr. 76); he was thus considered "unemployable" for purposes of entitlement to veterans' benefits as of October 29, 1975 (Tr. 75–76). The decision to increase Gyurko's disability rating was based on the conclusions of the VA's rating specialists, which in turn were founded on medical examinations and reports. In August 1976 the VA deemed Gyurko to have been "disabled" as early as October 29, 1975 because "[t]he evidence of record shows that the veteran's conditions have increased in severity to such a degree that the veteran is no longer able to be gainfully employed. . . ." (Tr. 75).

Before the ALJ, the plaintiff testified that he left Becton Dickinson & Co. because his psoriasis so affected his ability to concentrate that he no longer could perform his job properly (Tr. 27, 29–31). The following colloquies from the transcript of the administrative hearing are instructive:

Q. You mentioned that basically your main type of employment has been in the drafting field. How does your physical abnormalities affect you in that line of work?

A. Well, sitting down on the drawing board would be a condition where

3. In addition to the ailments described at greater length herein, Gyurko has also suffered from

diabetes mellitus, which he controls by following a special diet. (Tr. 50, 66, 74).

with my psoriasis I get to itching and irritating condition where even a scaling problem would affect by concentration to do my work properly.

\* \* \* \* \* \*

Q. Now, this problem in concentration, did it affect you as far as that was concerned?

A. Oh yes, I mean if you're aggravated with a problem where you're itching all the time and just couldn't concentrate and do, your figures properly.

(Tr. 29–30).

In his testimony before the ALJ, Gyurko ascribed his idleness from July 1975, when he left his last drafting job, to August 1976, when he began work at the Waterbury Post Office, to a combination of his arthritis, nervousness and psoriasis (Tr. 27). He further testified that he left his job at the Post Office because "I had trouble doing the job that I was required to do on the machine where they sort out the mail and also handling bags," as a result of his arthritis and his inability to concentrate (Tr. 24).

None of the plaintiff's testimony was controverted, and the ALJ made no finding disparaging his credibility as a witness.

### III. Review of the Administrative Record Under 42 U.S.C. § 405(g)

In light of the foregoing facts, the ALJ found that Gyurko "suffers from psoriasis, arthritis, diabetes and frozen feet" (Tr. 12). However, he also found that "[t]hese impairments when taken separately or in combination have not been shown to meet such a degree of severity so as to have prevented the claimant from engaging in substantial gainful activity for a continuous period of 12 months (Id.). On the basis of the latter finding, the ALJ concluded that "[t]he claimant is not under a 'disability' as that term is defined under the Social Security Act, as amended" (Id.).[4]

■ In its review of this administrative determination, the court is limited to deciding whether the ALJ correctly applied the governing law to the facts he found,[5] whether his findings of fact are supported by "substantial evidence" on the record as a whole,[6] and whether there is "good cause" for remanding the matter for a rehearing.[7]

4. As used in the Social Security Act generally, ". . . the term 'disability' means (A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months, or (B) blindness . . . ."
42 U.S.C. § 416(i)(1).
This definition is repeated in the section of the statute specifically governing disability insurance benefit payments (42 U.S.C. § 423(d)(1)(A)), with the following proviso: "[A]n individual (except a widow, surviving divorced wife, or widower for purposes of section 402(e) or (f) of this title) shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), 'work which exists in the national economy' means work which ex-

ists in significant numbers either in the region where such individual lives or in several regions of the country."
42 U.S.C. § 423(d)(2)(A).

5. See, e. g., Adams v. Weinberger, 548 F.2d 239, 243 (8th Cir. 1977); Griffis v. Weinberger, 509 F.2d 837, 838–39 (9th Cir. 1975).

6. See, e. g., Eiden v. Secretary of Health, Education & Welfare, 616 F.2d 63, 64 (2d Cir. 1980); Alvarado v. Califano, 605 F.2d 34, 35 (2d Cir. 1979) (per curiam); Gold v. Secretary of Health, Education & Welfare, 463 F.2d 38, 41 (2d Cir. 1972); 42 U.S.C. § 405(g). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938).

7. What constitutes "good cause" depends largely on the facts of individual cases. The inadequacy of an administrative record may constitute "good cause" to remand the matter. See, e. g., Smith v. Secretary of Health, Education & Welfare, 587 F.2d 857, 860–61 (7th Cir. 1978) (per curiam); Cutler v. Weinberger, 516

For the reasons set forth below, the court holds that (a) the ALJ misinterpreted the statutory definition of "disability"; (b) the ALJ's findings of fact did not adequately set forth the basis for his conclusion that the claimant was not entitled to disability insurance benefits; and (c) the record before the ALJ was so incomplete that it could not provide the requisite "substantial evidence" in support of the administrative decision. Accordingly, the matter is remanded, so that further evidence may be taken, new findings of fact may be made, and the proper legal standard may be applied to the facts found after rehearing.

### A. The ALJ's Application of Improper Legal Standards

■ The ALJ's finding that Gyurko's physical impairments were not so severe that they prevented him "from engaging in substantial gainful activity for a continuous period of 12 months" (Tr. 12) was clearly the predicate for his conclusion of law—erroneously labeled a "finding of fact"—that the plaintiff was not under a "disability," as that term is defined in the Social Security Act (*Id.*).

■ As a matter of law, the ALJ's ultimate finding as to the severity of Gyurko's medical problems does not support his conclusion that the plaintiff was not under a "disability." Whether a claimant is under a "disability" under the applicable statute does not depend (as the ALJ apparently assumed) on the existence of an impairment which is so severe that it prevents the claimant from engaging in substantial gainful activity for a twelve month period. It depends, rather, on a finding that (a) the claimant is unable "to engage in any substantial gainful activity" (b) because of an impairment which is of such severity that it "can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see Murphy v. Gardner*, 379 F.2d 1, 5 (8th Cir. 1967); *Laws v. Celebrezze*, 368 F.2d 640, 643 (4th Cir. 1966); *Moon v. Celebrezze*, 340 F.2d 926, 928 (7th Cir. 1965). The statutory test's reference to a continuous twelve month period relates to the period in which the claimant suffers from an impairment, rather than the length of time he is out of work. However, the ALJ's formulation of the standard indicates that he confused the two prongs of the statutory test for disability, so that he viewed the twelve month requirement as a measure of the claimant's inability to work (*see, e. g.*, Transcript of Oral Argument, p. 19), rather than as a test of the longevity of the claimant's impairment. In this case, the ALJ's misunderstanding appears to have caused him to focus incorrectly on the length of time Gyurko was unemployed, rather than on whether his ailments had lasted or could be expected to last for a continuous period of twelve months.

The ALJ's error of law requires that the case be remanded, so that the proper legal standard may be applied to the facts relevant to the plaintiff's claim of disability. *See, e. g., Adams v. Weinberger*, 548 F.2d 239, 243 (8th Cir. 1977); *Griffis v. Weinberger*, 509 F.2d 837, 838–39 (9th Cir. 1975); *Moncrief v. Gardner*, 357 F.2d 651 (5th Cir. 1966); *Roberts v. Califano*, 439 F.Supp. 188, 192 (E.D.Pa.1977).

### B. The Inadequacy of the ALJ's Findings of Fact

■ The ALJ's ultimate finding of fact is fatally flawed not only because it is based on an erroneous interpretation of the governing statutory language, but also because it lacks the requisite foundation of subordinate factual findings. The ALJ's findings jump from the preliminary finding that "[t]he claimant suffers from psoriasis, ar-

F.2d 1281, 1285–87 (2d Cir. 1975); *Hicks v. Mathews*, 424 F.Supp. 8, 9–10 (D.Md.1976). In general, courts have not required "such a technical and cogent showing of good cause as would justify the vacation of a judgment or the granting of a new trial, where no party would be prejudiced by the acceptance of additional evidence and the evidence offered bears directly and substantially on the matter in dispute." *Epperly v. Richardson*, 349 F.Supp. 56, 61 (W.D.Va.1972).

thritis, diabetes and frozen feet" to his conclusory finding that these ailments "when taken separately or in combination have not been shown to meet such a degree of severity so as to have prevented the claimant from engaging in substantial gainful activity for a continuous period of 12 months" (Tr. 12). The enormous logical gap between these findings is bridged by no intermediate factual determinations. The court is thus left with no indication as to which element or elements of the statutory definition of "disability" were not, in the ALJ's view, proved by the claimant.[8]

 This inadequacy compels the court to remand the case, for the findings of the ALJ afford no basis for meaningful judicial review of the substance of his decision. As the Court of Appeals for the Third Circuit has observed in the context of a claim for disability insurance benefits:

> "[A]n examiner's findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision. This is necessary so that the court may properly exercise its responsibility under 42 U.S.C. § 405(g) to determine if the Secretary's decision is supported by substantial evidence. It is incumbent upon the examiner to make specific findings— the court may not speculate as to his findings. *Williams v. Celebrezze*, 359 F.2d 950 (4th Cir. 1966). 'We think it is not too much to require that an administrative decision that a claimant is not eligible . . . be supported by explicit findings of all facts that are essential to the conclusion of ineligibility.'"

*Baerga v. Richardson*, 500 F.2d 309, 312–13 (3d Cir. 1974), *cert. denied*, 420 U.S. 931, 95 S.Ct. 1133, 43 L.Ed.2d 403 (1975), *quoting Choratch v. Finch*, 438 F.2d 342, 343 (3d Cir.

1971) (per curiam); *see also Strayhorn v. Califano*, 470 F.Supp. 1293, 1297 (E.D.Ark. 1979); *Weicht v. Weinberger*, 403 F.Supp. 244, 246 (D.Md.1975).

On remand, the ALJ is directed to make specific findings of all relevant facts preliminary and subsidiary to his ultimate finding. His findings should articulate explicitly and with particularity whether the plaintiff has established that his impairments, taken individually or in combination, either "can be expected to result in death" or have "lasted or can be expected to last for a continuous period of not less than 12 months"; whether the severity of those ailments is such as to render the plaintiff unable to do his previous work; whether his impairments left the plaintiff unable to engage in other substantial gainful work, considering his age, education and work experience; and, if it is found that Gyurko is able to engage in work other than his former duties, what such other work is. These matters are listed by way of example only, and do not constitute a complete checklist of items as to which the ALJ must make findings. What is essential is that, after rehearing, the ALJ enter specific findings as to each fact which is a necessary predicate to his determination that the plaintiff is or is not under a "disability," as defined in 42 U.S.C. §§ 423(d)(1)(A) and 423(d)(2)(A).

## C. *The Incomplete Administrative Record*

 A final infirmity which requires the court to reverse the administrative decision and remand the matter to the Secretary is the lack of a properly developed administrative record. Where, as was the case here, a claimant for disability benefits is not represented by counsel at the administrative hearing, "the administrative law judge has a duty 'scrupulously and conscientiously [to] probe into, inquire of, and explore for all

---

8. This point was underscored at oral argument on these cross-motions. The defendant's counsel argued that the ALJ implicitly found that the plaintiff had not established his inability to perform the types of work he previously did. As counsel conceded, this implicit finding was not articulated by the ALJ. *See* Transcript of Oral Argument, pp. 18–19, 25–26. Accordingly, the court has no basis, short of reading the ALJ's mind, to determine whether substantial evidence supports his findings.

the relevant facts . . . .' " *Cutler v. Weinberger*, 516 F.2d 1282, 1286 (2d Cir. 1975), *quoting Gold v. Secretary of Health, Education & Welfare*, 463 F.2d 38, 43 (2d Cir. 1972); *see also Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979); *Smith v. Secretary of Health, Education & Welfare*, 587 F.2d 857, 860 (7th Cir. 1978) (per curiam) ("It is a basic obligation of the ALJ to develop a full and fair record); *Lupinacci v. Mathews*, 433 F.Supp. 47, 50 (S.D.N.Y. 1977).

This principle is based on the non-adversarial nature of hearings before the ALJ and the practical realization that, without the assistance of counsel, a claimant (even if represented by a lay "claims representative") may not be able to call to the ALJ's attention all the available evidence supporting his or her claim. *See, e. g., Dobrowolsky v. Califano, supra*, 606 F.2d at 406–07; *Lupinacci v. Mathews, supra*, 433 F.Supp. at 50. Accordingly, in such situations,

" . . . courts have not hesitated to remand for the taking of additional evidence, on good cause shown, where relevant, probative and available evidence was either not before the Secretary or was not explicitly weighed and considered by him, although such consideration was necessary to a just determination of a claimant's application."

*Cutler v. Weinberger, supra*, 516 F.2d at 1285.

■ Here, the ALJ failed to develop three types of "relevant, probative and available evidence," the consideration of which was "necessary to a just determination of [the] claimant's application"—expert medical opinion evidence, the medical records underlying the VA's determination that the plaintiff was disabled, and x-rays taken at the Newington VA Hospital.

The administrative record contains reports from two doctors (Scalese and Vanoni) and a VA summary by a third physician (Murcko). In his evaluation of the evidence before him, the ALJ observed that the medical reports supported Gyurko's claims that he suffered from the ailments described on his application for disability benefits

(Tr. 11). However, the ALJ emphasized that Dr. Scalese's report "has no comments or statements with regard to the claimant's ability to work nor does his report indicate such a severity that I can conclude that the claimant is not capable of working" (*Id.*). Dr. Vanoni's report, the ALJ stressed, lacks any "mention . . . as to the severity of [Gyurko's] condition with regard to working" (*Id.*). Because of the apparent incompleteness or inconclusiveness of the medical reports, the ALJ found that he was "unable to conclude that the claimant had been under a 'disability' as that term is defined in the statute for a continuous period of 12 months" (*Id.*).

The absence or incompleteness of medical opinion evidence bearing on the severity of Gyurko's ailments or his ability to perform substantial gainful work should not necessarily have led the ALJ to conclude that Gyurko's claim was without merit. Rather, the dearth of evidence bearing on this point should have motivated him to take action to ensure that medical opinion evidence was added to the incomplete record before he rendered his decision. In view of the inadequate record, it was "incumbent upon the ALJ to emphasize the desirability of producing expert testimony, as to [the plaintiff's] medical disabilities and their effect on [his] capacity to engage in any substantial, gainful work within the meaning of the Act." *Smith v. Secretary of Health, Education & Welfare, supra*, 587 F.2d at 861. As in *Smith* and *Cutler v. Weinberger, supra*, the absence of such expert testimony requires that the matter be remanded so that a full administrative record can be developed. *See also Staskel v. Gardner*, 274 F.Supp. 861, 863–64 (E.D.Pa.1967); *Roberts v. Celebrezze*, 239 F.Supp. 262, 265 (E.D. N.Y.1965).

■ Other highly relevant evidence which the ALJ failed to develop on the record is to be found in the medical reports upon which the VA made its determination that Gyurko was disabled and the x-rays taken at the VA Hospital, which apparently supported that determination. As the ALJ correctly noted in his decision (Tr. 11), the VA's determination of disability, which is

measured by a different standard than the one governing disability insurance benefits under the Social Security Act, is relevant, although not conclusive, in this context. *See Hess v. Secretary of Health, Education & Welfare,* 497 F.2d 837, 841 n. 5 (3d Cir. 1974); *Deyo v. Weinberger,* 406 F.Supp. 968, 969 n. 7 (S.D.N.Y.1975); *Zimbalist v. Richardson,* 334 F.Supp. 1350, 1355 (E.D.N.Y.1971); *cf. Smith v. Secretary of Health, Education & Welfare, supra,* 587 F.2d at 861–62; *Cutler v. Weinberger, supra,* 516 F.2d at 1286.

Of greater relevance and probative value, however, than the VA's bare determination of disability[9] are the medical reports and x-rays which apparently convinced the VA ratings specialists to upgrade Gyurko's rating to a 100% disability and to determine that Gyurko was "no longer able to be gainfully employed" (Tr. 75). While the VA's ultimate determination may be rejected or minimized because it was based on a less stringent test of "disability" than the one guiding the ALJ, the underlying medical evidence is every bit as material to the ALJ's inquiry as it was to the question before the VA. Accordingly, the ALJ's failure to discharge his duty to see that such evidence became part of the administrative record requires this court to remand the case for further factual development.

In short, the record before the ALJ was so incomplete that it could not be deemed to constitute "substantial evidence" supporting the determination that Gyurko was not entitled to disability benefits.[10] The inadequacy of the record, in light of plaintiff's

lack of counsel at the administrative level, requires a remand for a new hearing.

### IV. *Conclusion*

As a result of the erroneous legal premise of the administrative decision, the inadequate findings upon which that decision was based and the incomplete state of the record below, the court finds it necessary to reverse the decision denying the plaintiff's disability insurance benefits, and to remand the matter for rehearing and the formulation of new findings of fact, pursuant to 42 U.S.C. § 405(g). Accordingly, the defendant's motion for summary judgment is denied, and the plaintiff's cross-motion is granted to the extent that the case is remanded to the Secretary for further proceedings consistent with this opinion.

It is so ordered.

---

**9.** The court credits the ALJ's statement that, in reaching his decision, he gave consideration to the VA's determination (Tr. 11).

**10.** Indeed, the evidence before the ALJ—even without the medical opinion evidence and the medical reports and x-rays upon which the VA relied—strongly suggested that Gyurko might be entitled to the benefits he claimed. The plaintiff's uncontroverted testimony, the credibility of which has not been questioned, indicates that his medical conditions are sufficiently long-standing to meet the 12 month requirement of 42 U.S.C. § 423(d)(1)(A) and that he left his last two jobs as a result of his physical ailments; there was no evidence in the record as to other types of gainful work which he might be able to perform. Incomplete though

the record before the ALJ was, it contained enough competent evidence supporting Gyurko's claim to render the ALJ's conclusory ultimate finding against the plaintiff's claim suspect. "[A]lthough the burden of proof of disability is on the claimant for benefits, the court is not bound to sustain the Secretary's denial 'where the applicant has raised a serious question and the evidence affords no sufficient basis for the Secretary's negative answer.'" *Merrigan v. Weinberger,* 426 F.Supp. 1149, 1152 (E.D.N.Y.1977), *quoting Kerner v. Flemming,* 283 F.2d 916, 922 (2d Cir. 1960); *see also Memoli v. Califano,* 463 F.Supp. 578, 582 (S.D.N.Y.1978); *Morris v. Ribicoff,* 194 F.Supp. 841 (W.D.Ark.1961).